UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    LISA CARPEN,                       Case No. 12-30352-dof
                                                   Chapter 13 Proceeding
               Debtor.                       Hon. Daniel S. Opperman
_____/

LISA CARPEN,

    Plaintiff,

v.                                                         Adversary Proceeding
                                                       Case No. 12-3089-dof

FEDERAL HOME LOAN MORTGAGE
CORPORATION and WELLS FARGO
HOME MORTGAGE,

    Defendants.
_____/

Opinion Regarding Motion to Dismiss Adversary Proceeding of
<u>Defendants, Federal Home Loan Mortgage Corporation and Wells Fargo Home Mortgage</u>

       The Plaintiff, Lisa Carpen, requests that this Court set aside a Sheriff's Deed resulting from the foreclosure sale of her property at 383 North Latson Road, Howell, Michigan ("Latson Road Property"). The Defendants, Federal Home Loan Mortgage Corporation and Wells Fargo Home Mortgage, filed a Motion to Dismiss Plaintiff's Complaint. For the reasons stated in this Opinion, the Court grants the Defendants' Motion to Dismiss.

Facts

       The Plaintiff granted a first mortgage to Wells Fargo on July 25, 2006, on the Latson Road Property. The mortgage was recorded on August 9, 2006. The Plaintiff fell behind on her payments to Wells Fargo, but the parties discussed this matter and, per the Plaintiff's allegations, entered into

1

a Loan Modification Agreement commencing in April, 2010.

The Plaintiff alleges that she made all of her payments under the Loan Modification Agreement. Nevertheless, Wells Fargo initiated a foreclosure by advertisement process after sending the Plaintiff a letter on August 2, 2010, denying her request for a loan modification. Afterward, the Plaintiff alleges that she was in contact with various people from Wells Fargo and, in particular, someone named "Martha," who assured her that her case was still active and that Wells Fargo was still reviewing the possibility of a loan modification.

The Plaintiff received a letter on December 8, 2010, from Wells Fargo stating that Wells Fargo valued the Plaintiff "as a customer and [it has] several options that may help her keep her home". Apparently, one week later, Wells Fargo sent the Plaintiff a Pre-Foreclosure Notice. After receiving this Pre-Foreclosure Notice, the Plaintiff contacted her attorney and requested a meeting with Wells Fargo's agent.

This meeting was held on March 21, 2011. At this meeting, the Plaintiff alleges that it was agreed that she would provide a set of documents to Wells Fargo and that the foreclosure process would be held until she did so. Wells Fargo disagrees with this assertion and claims that alleged agreement was not made because Wells Fargo determined the Plaintiff was not eligible for a loan modification.

Wells Fargo sent the Plaintiff's attorney a letter on March 25, 2011, stating that the Plaintiff was not eligible for a modification because "she had failed to satisfy one or more guideline requirements established by the investor on this loan. Consequently, the lender and/or servicer cannot offer you a loan modification. As result of the fact that the loan is ineligible for modification, this office is proceeding with foreclosure."

2

12-03089-dof    Doc 32    Filed 02/27/13    Entered 02/27/13 15:54:22    Page 2 of 11

The Plaintiff's attorney sent a response letter indicating that additional documents would be sent to show the Plaintiff's increase in income. After a Notice of Foreclosure was sent, Wells Fargo sent a number of letters to the Plaintiff. On May 11, 2011, Wells Fargo foreclosed on the Latson Road Property. Federal Home Loan purchased the Latson Road Property at this sale. The Plaintiff received a letter from Wells Fargo on June 21, 2011, that stated:

> "Our records reflect that your client's loan was reviewed multiple times for possible workout options, including a Loan Modification, to assist you in bringing the loan current. On February 14, 2011, the loan was approved for a special forbearance agreement was never received [sic]. As a result, the loan was removed from Home Preservation review on March 8, 2011, and foreclosure action continued. Please be advised, WFHM received a request to re-review the loan for possible workout options, however the necessary documents were not received to continue the review process.
>
> Our records indicate on December 2, 2010, due to the status of the loan, foreclosure proceedings were initiated. The property was sold at a Foreclosure Sale on May 11, 2011. Further information regarding the sale is a matter of public record and your client may contact the local County Recorder's office to obtain any additional information.
>
> I can confirm that it is our practice to continue working with our borrowers who wish to explore workout options until the date a foreclosure sale is held. We may at times agree to postpone the date of a foreclosure sale as a result of these negotiations; however, foreclosure action is not halted or suspended until a viable plan has been approved and the first payment of that plan is received. Due to the fact that there had not been a workout option established, WFHM proceeded with all collections, acceleration, and foreclosure activity until the date of the foreclosure sale which was held May 11, 2011. As a result, the foreclosure sale is valid and is not being rescinded."

After receiving this letter, the Plaintiff alleges that she had conversations with Wells Fargo individuals and that she still believed that Wells Fargo was working with her to keep her Latson Road Property. By operation of law, the redemption period for the Latson Road Property expired November 11, 2011.

The Defendant, Federal Home Loan, initiated an eviction action against the Plaintiff in the

3

53rd Judicial District Court. On December 13, 2011, the District Court entered a Consent Judgment finding that Federal Home Loan was entitled to possession of the Latson Road Property. Per this Judgment, the appeal period expired January 31, 2012.

On January 30, 2012, the Plaintiff filed a bankruptcy petition seeking relief under Chapter 13 with this Court. Afterward, the Plaintiff filed the Complaint initiating this adversary proceeding and, after a hearing, amended her Complaint. In response, the Defendants filed the instant Motion to Dismiss and the Plaintiff timely responded to that Motion.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. Plaintiff alleges this is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(H) and (K)

The Court has jurisdiction regarding this matter pursuant to *Stern v. Marshall*, 131 S. Ct. 2594 (2011), and by the Sixth Circuit Court of Appeals in *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012). At the December 6, 2012, hearing regarding the Defendants' Motion, the Court raised this issue and both parties agreed that the Court could issue its opinion as to the Defendants' Motion because the Rooker-Feldman doctrine was in question.

## Applicable Authorities

1. Standard for Motion to Dismiss - Failure to State a Claim

Federal Rule of Civil Procedure 12(b), applicable in this adversary proceeding through Federal Rule of Bankruptcy Procedure 7012, states:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in a responsive

4

> pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted.

A motion brought under Federal Rule of Civil Procedure 12(b)(6) tests the "sufficiency of [a] complaint." *Conley v. Gibson*, 351 U.S. 41, 46 (1957). A court is asked "to examine the plaintiff's allegations and determine whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635,638 (6th Cir. 1993). "A court considering a motion to dismiss under Rule 12(b)(6) 'must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff.'" *Benzon v. Morgan Stanley Distributors*, 420 F.3d 598, 605 (6th Cir. 2005)(*quoting Inge v. Rock. Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002)(*citing Turker v. Ohio Dep't of Rehab. & Corr.*, 157 3d 453, 456 (6th Cir. 1998))). If "an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1120, 1138 (6th Cir. 1995). "While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions." *Andrews v. State of Ohio*, 104 F.3d 803, 806 (6th Cir. 1997)(*quoting Allard v. Weitzman* (*In re Delorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993)(emphasis in original)). Under "the Federal Rules of Civil Procedure, a plaintiff is required to provide a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 351 U.S. at 47. "In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Andrews v. State of Ohio*, 104 F.3d at 806

5

(*quoting In re Delorean Motor Co.*, 991 F.2d at 1240).

In *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, the United States Supreme Court revisited the standards that govern Federal Rule of Civil Procedure 12(b)(6) dismissal motions. In doing so, the United States Supreme Court in *Twombly* reaffirmed the "notice pleading" standard of Federal Rule of Civil Procedure 8(a)(2) but renounced "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 560-61 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

The United States Supreme Court later examined *Twombly* in the case of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). In *Iqbal*, the United States Supreme Court held that *Twombly* applies to all civil actions and is not limited to antitrust disputes only as was the case in *Twombly*. *Iqbal*, 129 S. Ct. at 1953.

2. The <u>*Rooker-Feldman* Doctrine</u>

Under the United States Supreme Court's "Rooker/Feldman abstention doctrine, . . . a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. Grandy*, 512 U.S. 997, 1005-06 (1994) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)).

> The [Rooker/Feldman] doctrine expresses the principle that federal trial courts have only original subject matter, and not appellate, jurisdiction [and] . . . may not entertain appellate review of [or collateral attack on] a state court judgment. Rooker/Feldman is a limitation on subject matter jurisdiction in federal courts. The

doctrine complements the statutory jurisdictional scheme of the federal courts . . . that limits federal review of state court proceedings to the United States Supreme Court. The Rooker-Feldman Doctrine bars a lower federal court from conducting a virtual "review" of a state court judgment for errors in construing federal law or constitutional claims "inextricably linked" with the state court judgment. The state and federal claims need not be identical for the doctrine to apply. In order to determine whether a claim is 'inextricably intertwined' with a state court claim, the federal court must analyze whether the relief requested in the federal action would effectively reverse the state court decision or void its ruling. In other words, the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.

The Rooker/Feldman doctrine is related to but different from preclusion principles. The Sixth Circuit stated that the "doctrine [is] a combination of the abstention and res judicata doctrines . . . ." *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1993).

*Singleton v. Fifth Third Bank of Western Ohio (In re Singleton)*, 230 B.R. 533, 536-37 (B.A.P. 6th Cir. 1999) (quotation marks and citations omitted).

In *McCormick v. Braverman*, 451 F.3d 382, 395 (6th Cir. 2006), the Sixth Circuit Court of Appeals addressed the question of "whether the *Rooker-Feldman* doctrine should apply to a federal plaintiff in privity with a party in the state court proceeding." The court in *McCormick* acknowledged that *Rooker-Feldman* applied only to "state court losers" but found that "[u]nder a more moderate interpretation, a person in privity with the actual party who loses in state court may be deemed a state-court loser." *Id*. at 396. "It would be inconsistent to disallow the party in the state suit to raise a federal claim but to allow his privy to bring the exact same claim. A state party may not circumvent the Article III jurisdictional provisions simply by substituting a privy's name for his own in the federal claim." *Id*. The Sixth Circuit Court of Appeals continued: "In other words, a federal claim that alleged injury from a state court judgment would seek review of that state court judgment, regardless if the state court loser or his privy filed the federal claim. The district

7

court may not entertain jurisdiction over a claim that calls for appellate review, **no matter who raises that claim**." *Id*. (emphasis added). In a footnote, the Sixth Circuit Court of Appeals further observed that "a federal claim filed by a privy of the state court loser that asserts an injury caused by the state court judgment could properly be characterized as an appeal from that judgment." *Id*. at n.9.

*McCormick* has been repeatedly cited by lower courts in this circuit for its privity exception to the non-party rule. *See*, *e.g.*, *McCurdy's Electronic Sec., Inc. v. Daugherty*, 3:10–62–DCR, 2011 WL 2133567, 2 (E.D. Ky. May 26, 2011) (quoting *McCormick*) ("Although the Rooker–Feldman doctrine generally bars claims only by a plaintiff who was a party to the state-court action, the Sixth Circuit has held that 'a person in privity with the actual party who loses in state court may be deemed a state-court loser' whose claim is also barred."); *Crossroads Media, LLC v. Village of Baldwin*, 2007 WL 772901, at *2 (W.D. Mich. Mar. 12, 2007) (citing *McCormick*) ("Plaintiff contends that the *Rooker-Feldma*n doctrine does not apply because Plaintiff Crossroads was not a party to the state court action. The Sixth Circuit Court of Appeals has determined that the *Rooker-Feldman* doctrine applies not only to parties to the state court action, but also to a federal plaintiff in privity with a party in the state court proceeding."); *Farmer v. City of Cincinnati*, 2006 WL 3762131 (S.D. Ohio Dec. 21, 2006) (citing *McCormick*) ("The Sixth Circuit has interpreted the 'state court losers' language broadly to include not only the state court losing party, but also those in privity with the state court losing party.").

3. <u>Res Judicata</u>

8

"As a general matter, the doctrine of res judicata forecloses relitigation of matters that were determined, or should have been raised, in a prior suit in which a court entered a final judgment on the merits." *Fellowship of Christ Church v. Thorburn*, 758 F.2d 1140, 1143 (6th Cir. 1985) (citing *Migra v. Warren City School District*, 465 U.S. 75 (1984)).

> "Res judicata" has both a general and a specific meaning. In its general sense it refers to the preclusive effects of former proceedings. This broad category is divided into two more specific groups: "res judicata" in its narrower sense, and "collateral estoppel." Res judicata, in its narrow sense, refers to claim preclusion. Collateral estoppel refers to issue preclusion. Since the differences between the two require significantly different analyses, it is important to keep clear which is being discussed. . . . For clarity we prefer the more specific term, "collateral estoppel."

*Dodrill v. Ludt*, 764 F.2d 442, 443 (6th Cir. 1985).

Analysis

*Rooker-Feldman*

Under Michigan law, the issues raised by the Plaintiff in her Complaint should have been addressed prior to the expiration of the redemption period. Moreover, the Plaintiff had the opportunity to raise all of the issues stated in her Complaint as a defense or affirmative matter in the eviction action. In the eviction action, however, Judgment was entered against the Plaintiff and finding that Federal Home Loan was entitled to possession of the property.

The Plaintiff in this case seeks to have this Court review the decision of the 53rd District Court. This Court is precluded from doing so, however, because of the *Rooker-Feldman* doctrine.

This case is factually similar to *Kapla v. Federal National Mortgage Association*, 2012 WL 6569739 (Bankr. E.D. Mich. Dec. 14, 2012)(J. Shefferly). In *Kapla*, Chief Judge Shefferly dismissed all of the actions raised by the plaintiff, who was seeking to set aside a sheriff's deed

9

arising from alleged deficiencies in the foreclosure process, because the redemption period had expired and a judgment of possession had been entered against plaintiff. In this case, the *Rooker-Feldman* doctrine precludes this Court from hearing an appeal of the District Court Judgment.

Res Judicata

Likewise, although the Court has already determined that the *Rooker-Feldman* doctrine precludes review by this Court, the Court finds that the doctrine of Res Judicata applies and the Plaintiff may not assert the claims she should have asserted in the state court. It is clear from the time table in this case that the Plaintiff knew that the foreclosure process was continuing, but she continued to try to work with Wells Fargo. Certainly, by the time the foreclosure sale was held, the Plaintiff should have known that any statements by Wells Fargo that it was going to work with her were not trustworthy. Moreover, by the time the foreclosure sale was completed, the Plaintiff certainly knew that she had to take steps to stop the running of the redemption period. Instead of taking the steps, however, the Plaintiff did not take any action in state court whatsoever.

By the time the redemption period had run, the Plaintiff still had the opportunity to raise the claimed deficiencies in the 53rd District Court, but she did not do so. There can be no doubt that when she appeared in court on December 12, 2011, that the Defendant, Federal Home Loan, clearly intended to take the Latson Road Property and that she knew she needed to do something to stop that from occurring. Instead, the Plaintiff consented to the relief requested, which, under Michigan law, means that she no longer had rights to the property.

For these reasons, the Court finds that the *Rooker-Feldman* doctrine precludes this Court from reviewing the state court Judgment and the Defendants' Motion to Dismiss should be granted.

10

Additionally, the doctrine of Res Judicata precludes this Court from reviewing issues of fact and law that either would or could have been litigated in a previous court action.

Counsel for the Defendants is instructed to prepare an Order consistent with this Opinion. Presentment of this Order shall be consistent with the rules of procedure of this Court.

**Signed on February 27, 2013**

                                                    **/s/ Daniel S. Opperman**
                                                  **Daniel S. Opperman**
                                                  **United States Bankruptcy Judge**